## Clark et al. v. Witkin et al.

*D. Berger, W. Stein* and *A. B. McGinnis, Jr.,* for plaintiffs.

*W. T. Connor,* for defendants.

McDEVITT, P. J., November 7, 1949.—This matter comes before the court as a complaint or action in mandamus, and seeks to have the court direct the county commissioners who are the County Board of Elections in and for the County of Philadelphia to appoint assistants to inspect the election divisions in the county; to appoint duly qualified voters from both parties to supervise the election divisions and to appoint a trained staff of investigators for the purpose of obtaining and perpetuating evidence of election frauds. In a nutshell, the court is really asked to direct the county commissioners to appoint a staff of traveling supervisors who will direct the conduct of the various election divisions, note irregularities if such are committed, perpetuate the evidence and see that the same is presented to the district attorney for future prosecution.

The election court is perhaps far reaching in its authority along certain lines, but the courts have not yet begun to legislate. It is horn book law that we

cannot interfere in discretionary matters, even though we might direct a county official to perform a ministerial duty. Every law-abiding citizen in the community is interested in honest elections, and the conduct of our government depends upon the character of our officials. Indifference to the right to vote creates more trouble than election day fracases. But the election laws are clear and specific as to who may be admitted to the polling places, and for the court to direct the county commissioners to appoint such a staff as is suggested would, I am afraid, cause confusion confounded.

Section 1220 (*d*) of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §3060 is as clear as the English language can be expressed and says:

"All persons, except election officers, clerks, machine inspectors, overseers, watchers, persons in the course of voting, persons lawfully giving assistance to voters, and peace and police officers, when permitted by the provisions of this act, must remain at least ten (10) feet distant from the polling place during the progress of the voting."

It can readily be seen in view of the limited space in most of the voting places in Philadelphia that adding supervisors, inspectors and investigators to the group already admitted would make it well nigh impossible for the electors themselves to exercise their franchise. From time to time it has become necessary to send mechanics to repair voting machines. Upon complaint the courts have sent their representatives to investigate conditions prevailing in some divisions, but to have a flying squadron with a certain number allotted to particular divisions or roving from place to place, instead of guaranteeing a free and honest election would, we fear, create turmoil, which would defeat the purpose of all those interested in honesty.

There may be some contradictory provisions in the Election Code, but we are not asked to reconcile those. It is clear, however, from a practical viewpoint that the General Assembly never intended that three county commissioners should visit as many as 1,376 election divisions in the City of Philadelphia on election day. They cannot anticipate trouble, but if irregularities are brought to their attention it is clearly their duty to have ready sufficient force to make an immediate investigation of the same to the end that the irregularity shall be stopped and the guilty punished.

The court is in no position to tell the county board of elections whom to appoint or how many to appoint because the mandate of the law makes it their duty to provide such as are necessary. It is well to avoid violations of the law by preventing them, but it is impossible to anticipate where such irregularities might occur, and the courts are powerless to act until such matters are brought to their attention. Most trouble on election days is caused by frazzled nerves and bad tempers. The law fixes the hours for the election court to be open on election day, and this law will, with an adequate number of judges to meet emergencies, be respected. But we cannot agree with counsel's interpretation that any others than those referred to in section 1220 (d) and sections 1806 and 1807 of the Election Code are entitled to be present in the polling places. This list of individuals is very specific, and as we have stated before we cannot legislate, we can only interpret and enforce. School boys and girls seeking a thrill and with no other interest have caused considerable confusion in recent years.

Nothing can be gained by a discussion of the various opinions of the appellate courts concerning the right of mandamus. While we may have the right to interfere where discretion is abused, we certainly have no right

to interfere with the exercise of discretion until it has been abused by action or inertia. Mandamus is an extraordinary remedy, and will be granted only in cases of necessity, and never where there is a doubt as to its necessity or propriety. It has been well stated that mandamus may be used to compel the exercise of a duty but it will never be used to coerce or control the exercise of official discretion or judgment.

While the court cannot compel the county commissioners to exercise any discretionary right unless it becomes apparent they are neglecting an apparent duty, we do suggest that they throw about the election every possible safeguard that can be erected to the end that the citizens may make their choice free and untrammeled and with no complications or irregularities.

The complaint is, therefore, dismissed, and the prayer of the petition refused.